UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FATIMA SULLIVAN,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>STORER TRANSIT SYSTEMS, et al.,<br><br>　　　　Defendants. | Case No. 20-cv-00143-JCS<br><br>**ORDER REGARDING MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 24 |

## I.　INTRODUCTION

Plaintiff Fatima Sullivan brings this action against Defendant Storer Transit Systems ("Storer") asserting disability discrimination in violation of the Americans with Disabilities Act ("ADA") and related claims under California law.  On a motion by Storer, the Court previously dismissed Sullivan's complaint with leave to amend.  Sullivan has now filed a first amended complaint, and Storer once again moves to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure and for failure to state a claim under Rule 12(b)(6), and moves to strike portions of Sullivan's complaint under Rule 12(f).  The Court finds the matter suitable for resolution without oral argument and VACATES the hearing previously set for June 19, 2020.  For the reasons discussed below, Storer's motion is DENIED.[1]

The case management conference previously set for June 19, 2020 at 9:30 AM is CONTINUED to 2:00 PM the same day.  The Clerk will separately provide instructions for the parties to appear remotely at that conference.

---

[1] The parties have consented to the undersigned magistrate judge presiding over the case for all purposes pursuant to 28 U.S.C. § 636(c).

## II.     BACKGROUND

### A.     Factual Allegations and Previous Order

Sullivan, a resident of San Francisco, is a regular patron of the Graton Resort & Casino ("Graton") in Sonoma County, where she enjoys "platinum card" privileges. 1st Am. Compl. ("FAC," dkt. 23) ¶¶ 7, 15. Sullivan asserts that she is disabled due to injuries to her left knee and right hand. *Id.* ¶ 10–12.

Sullivan first injured her left knee on April 19, 2008, when she was struck by a motor vehicle. *Id.* ¶ 10. Following the injury, Sullivan was treated with physical therapy. *Id.* In May 2012, Sullivan underwent surgery on her left knee to treat her continuing knee pain. *Id.* As a result of the surgery, Sullivan claims that her left knee occasionally buckles. *Id.* ¶ 11. In May 2015, Sullivan's left knee buckled causing her to fall, and Sullivan was then prescribed a brace for her knee. *Id.* In August 2018, Sullivan applied for a disabled person placard and license plates from the California Department of Motor Vehicles ("DMV"). *Id.* ¶ 13. In her application, Sullivan's primary care physician described Sullivan's relevant illness or disability as "[a]dvanced osteoarthritis (L) knee." *Id.* The DMV approved Sullivan's application and issued Sullivan a disabled person parking placard and license plates, which expired on June 30, 2019. *Id.* ¶ 14.

Sullivan first injured her right hand when she fell in May 2015. *Id.* ¶ 11. Sullivan fractured her right hand during the fall. *Id.* On May 29, 2018, Sullivan further injured her hand while pulling a wheel block at work. *Id.* ¶ 12. Sullivan complained of radiating pain and numbness. *Id.* Sullivan's right hand was found to be 5% permanently disabled. *Id.*

Storer operates shuttle bus transportation from San Francisco to Graton, among other bus routes. *Id.* ¶ 8. Sullivan boarded a Storer bus around 7:15 PM on October 20, 2018 and traveled from San Francisco to Graton without incident, riding in the front of the bus in the "priority seating" area. *Id.* ¶ 15. Sullivan attempted shortly before midnight to return to San Francisco on a Storer bus and sat in the same area at the front, in order to alleviate her knee and hand problems by reducing the distance she needed to walk and her need to grasp objects while walking to a seat further back on the bus. *Id.* ¶ 16. The bus driver, however, shouted at her that she could not sit there because it was reserved for people with disabilities. *Id.* ¶¶ 16–17. Sullivan identified herself

2

as disabled and attempted to show the driver documentation that she had in her purse, but the driver said that Sullivan did not "have a walker or a cane" and called a Graton security guard. *Id.* ¶¶ 17–18. Another passenger also shouted at Sullivan to go to the back of the bus. *Id.* ¶ 17.

When the security guard arrived, the driver told the guard that Sullivan threatened other passengers and the driver feared for his life. *Id.* ¶ 18. Sullivan denied threatening passengers "and said that the driver was not being truthful," but the guard told Sullivan to leave the bus, that "we'll do it just like they did at Starbucks,"[2] and that he would call law enforcement if Sullivan refused. *Id.* When a supervisor from Graton arrived, the supervisor believed the bus driver's version of events and told Sullivan that she was trespassing and would be banned from the casino. *Id.* ¶ 19. Sullivan eventually left the bus and had to wait until 3:00 AM for another bus to take her home to San Francisco. *Id.* ¶¶ 19, 22. Another passenger, who was not disabled, was allowed to sit in the priority seating area of the bus that Sullivan was forced to vacate. *Id.* ¶ 20.

Sullivan alleges that these events caused her humiliation and to experience symptoms of a panic attack. *Id.* ¶ 21. Sullivan later experienced difficulty sleeping, agitation, and passive suicidal ideation and was subsequently diagnosed with post-traumatic stress disorder. *Id.* ¶¶ 21, 23.

The FAC asserts three claims: (1) discrimination based on disability by "failing to provide full and equal enjoyment of . . . goods, services, facilities, privileges, advantages, or accommodations"—specifically, the Storer bus—in violation of the ADA, *id.* ¶¶ 24–28; (2) disability discrimination based on the same conduct in violation of sections 54 and 54.1 of the California Civil Code, *id.* ¶¶ 29–35; and (3) negligent infliction of emotional distress, *id.* ¶¶ 36–40.

The Court previously dismissed Sullivan's claims with leave to amend for failure to state a claim on which relief may be granted. Order Granting Mot. to Dismiss (dkt. 22).[3] The Court held

---

[2] The reference to Starbucks is not explained in the FAC or briefing.
[3] *Sullivan v. Storer Transit Sys.*, No. 20-cv-00143-JCS, 2020 WL 1531366 (N.D. Cal. Mar. 31, 2020). Citations herein to the Court's previous order refer to page numbers of the version filed in the Court's ECF docket.

3

that Sullivan had not sufficiently alleged disability under the ADA and stated, "[a]ny amended complaint should clearly identify the disability or disabilities underlying Sullivan's ADA claim, explain how they limit a major life activity, and clarify Sullivan's theory of how Storer failed to provide her equal access on account of those disabilities." *Id*. at 8–9.

### B. Parties' Arguments

#### 1. Storer's Motion

Storer argues that Sullivan's ADA claim is not sufficiently alleged in two respects and should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). Mot. (dkt. 24) at 6. First, Storer contends that Sullivan has not sufficiently alleged that she is disabled under the ADA. *Id*. at 8. Storer provides the definition of disability under the ADA and argues that Sullivan has not alleged that she is substantially limited in performing a major life activity. *Id*. Instead, Storer argues that Sullivan has only described her medical issues and, thus, failed to allege, beyond conclusory allegations, how these issues are a substantial limitation on her performing major life activities. *Id*.

Second, Storer argues that Sullivan has failed to allege that she was discriminated against because of her disability. *Id*. at 9. Storer asserts that Sullivan's claim must allege either intentional discrimination by Storer or a failure to provide appropriate modifications by Storer to accommodate those with disabilities. *Id*. Storer argues that Sullivan fails to allege intentional discrimination by Storer because Storer's employee did not perceive Sullivan to be disabled and argues that Sullivan fails to allege a lack of appropriate modifications by Storer because Sullivan alleges that Storer indeed provided preferred seating to the disabled. *Id*.

Storer then turns to Rule 12(b)(1) of the Federal Rules of Civil Procedure and argues that Sullivan's complaint should be dismissed for lack of subject matter jurisdiction because there is no actual case or controversy before the Court. *Id*. Storer argues that Sullivan can only seek injunctive relief under the ADA and such relief cannot be granted because Storer has already voluntarily complied with the injunction Sullivan seeks. *Id*. at 9–10. Storer claims that if a defendant voluntarily ceases its wrongful conduct and meets its burden in showing that its wrongful conduct will not recur, the defendant can moot an issue. *Id*. at 10. Here, Storer asserts

that it has changed its policies in December 2018 to allow any passenger self-identifying as disabled to use the bus seats reserved for the disabled. Kelley Decl. (dkt. 24-1) ¶ 3. Additionally, Storer claims to have trained its bus drivers and communicated its new policy in January 2019. *Id*. ¶ 5. As a result, Storer contends, there remains no possibility that a Storer bus employee could ask Sullivan again to change her seat on the basis of any perceived lack of a disability. Mot. (dkt. 24) at 10. Storer concludes that, because Storer has shown compliance with the ADA, there is no further remedy available to Sullivan, and thus her ADA claim is moot. *Id*. at 11.

Additionally, Storer argues that if Sullivan's ADA claim is dismissed, the Court should decline to exercise supplemental jurisdiction over Sullivan's remaining state law claims and dismiss them. *Id.* Finally, Storer moves that the Court strike Sullivan's request for compensatory damages under Title III of the ADA, because Storer argues that the ADA only provides for injunctive relief. *Id*.

### 2. Sullivan's Opposition Brief

Sullivan first argues that she adequately pleaded her ADA claim in the FAC. Opp'n (dkt. 25) at 4. Sullivan reiterates the injuries to her left knee and right hand set out in the FAC and the resulting physical impairments that limit her ability to perform major life activities. *Id*. at 5. Accordingly, Sullivan concludes that she adequately alleged her disability under the ADA. *Id.* at 6. In response to Storer's contention that Sullivan was not denied transportation by Storer on account of her disability, Sullivan argues that she told the Storer bus driver that she was disabled and offered to show the bus driver evidence from her purse. *Id*. at 6–7. Sullivan contends that because the bus driver did not believe that she was disabled and continued to demand that she sit in a different seat, Storer was discriminated against because of her disability. *Id.*

With respect to Storer's assertion that her ADA claim is moot, Sullivan first disputes that Storer has voluntarily complied with the ADA. *Id.* Sullivan questions the credibility of the declaration and policy memorandum submitted with Storer's present motion, which evidence Storer's claim that Storer's policy change satisfies the ADA. *Id.* Because the parties have not had an opportunity for discovery and because Sullivan raises issues of fact, Sullivan concludes that the Court must conduct an evidentiary hearing or allow for discovery to resolve the issue of subject

5

matter jurisdiction. *Id*.

Sullivan then argues that, even if Storer's factual assertions are true, Storer has not met its burden in asserting voluntary cessation. *Id*. at 9. Sullivan contends that Storer cannot moot the claim by simply ending its wrongful conduct. *Id*. Rather, Sullivan argues that Storer must meet a high burden and demonstrate that its wrongful conduct cannot reasonably be expected to return. *Id*. at 9–10. Sullivan argues that Storer has not done so because (1) it is unclear that all of Storer's drivers have received the policy memorandum updating its ADA policy, (2) Storer has not shown that employees hired after January 2019 have been trained with respect to the updated ADA policy, and (3) Storer is free to revert to its wrongful conduct at any time. *Id*. at 10.

Finally, Sullivan argues that Storer's motion to strike should be denied. *Id*. at 11. Sullivan contends that the *Darby* case Storer cites does not support the proposition that a court may strike a request for damages beyond what is provided for by statute. *Id*.; *see Darby v. City of Torrance*, 810 F. Supp. 271 (C.D. Cal. 1992), *rev'd on other grounds*, 46 F.3d 1140 (9th Cir. 1995). Further, Sullivan briefly argues that Storer's request to strike falls outside what is allowed under Federal Rule of Civil Procedure 12(f). Opp'n at 12. Finally, Sullivan asserts that Storer has not shown that it has been prejudiced by the inclusion of the request for damages. *Id*.

### 3. Storer's Reply

In Storer's reply brief, Storer reasserts that Sullivan has failed to state a claim on which relief can be granted. Reply (dkt. 26) at 3. Storer argues that, while Sullivan detailed her previous injuries more thoroughly in the FAC than in her initial complaint, Sullivan still fails to allege how she is substantially limited in her performance of major life activities. *Id*. Storer contends that Sullivan's description of her physical limitations remains a "formulaic recitation of the elements of the causes of action." *Id*. at 4 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Storer maintains that Sullivan's ADA claim is moot and that Storer has met its burden to show voluntary cessation. *Id*. at 5. Storer argues that it is not reasonable to expect Storer to revert to its challenged policy in the future. *Id*. Storer also contends that because its employee asked Sullivan to change seats for the purpose of keeping the seats available to those with a disability, Storer could not have discriminated against Sullivan on the basis of disability. *Id*. at 5–6. Storer

expands its standing argument to also assert that Sullivan must show a "real or immediate threat" of Storer wronging her in the future as a standing requirement under Title III of the ADA. *Id*. at 5. Storer concludes its mootness arguments by disputing Sullivan's contention that the motion is premature. *Id*. at 5. Storer argues that questions of subject matter jurisdiction may be raised at any time. *Id*. at 6. Storer's final section reasserts that the Court should strike Sullivan's request for damages under the ADA because the ADA does not provide for damages. *Id*.

## III. ANALYSIS

### A. Storer's Motion to Dismiss for Lack of Subject Matter Jurisdiction

#### 1. Legal Standard Under Rule 12(b)(1)

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a district court must dismiss an action if it lacks jurisdiction over the subject matter of the suit. *See* Fed. R. Civ. P. 12(b)(1). "Subject matter jurisdiction can never be forfeited or waived and federal courts have a continuing independent obligation to determine whether subject-matter jurisdiction exists." *Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 975 n.12 (9th Cir. 2012) (internal quotation marks and citations omitted). On a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), it is the plaintiff's burden to establish the existence of subject matter jurisdiction. *Kingman Reef Atoll Invs., LLC v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008).

A party challenging the court's subject matter jurisdiction under Rule 12(b)(1) may bring a facial challenge or a factual challenge. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In evaluating a facial challenge to subject matter jurisdiction, the court accepts the factual allegations in the complaint as true. *See Miranda v. Reno*, 238 F.3d 1156, 1157 n.1 (9th Cir. 2001). Where a defendant brings a factual challenge, on the other hand, "a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment." *White*, 227 F.3d at 1242 (citation omitted). Once the moving party has made a factual challenge by offering affidavits or other evidence to dispute the allegations in the complaint, the party opposing the motion generally must "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *Colwell v.*

*Dep't of Health & Human Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009) (quoting *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989)).[4]  Here, Storer has presented extrinsic evidence, such as the declaration of Dawn Kelley and the December 2018 ADA policy memorandum, to support its argument that the Court lacks jurisdiction, so its challenge is factual.

The ADA was enacted to address Congress's finding that although "physical or mental disabilities in no way diminish a person's right to fully participate in all aspects of society . . . many people with physical or mental disabilities have been precluded from doing so because of discrimination."  42 U.S.C. § 12101(a)(1).  The purpose of the ADA is to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities."  42 U.S.C. § 12101(b)(1).  The Supreme Court has instructed courts to "take a broad view of constitutional standing in civil rights cases, especially where, as under the ADA, private enforcement suits 'are the primary method of obtaining compliance with the Act.'"  *Doran v. 7-11, Inc.*, 524 F.3d 1034, 1039 (9th Cir. 2008) (quoting *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972)).  Nonetheless, a plaintiff asserting claims under the ADA must establish the existence of a case or controversy under Article III of the Constitution.  *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (citing U.S. Const. art. III, § 2; *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

"A federal court does not have jurisdiction 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'"  *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997) (quoting *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992)).  "At any stage of the proceeding a case becomes moot when 'it no longer present[s] a case or controversy under Article III, § 2 of the Constitution.'"  *Abdala v. I.N.S.*, 488 F.3d 1061, 1063 (9th Cir. 2007) (quoting *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)).  "If an event occurs that prevents the court

---

[4] While it is generally the plaintiff's burden to provide evidence of standing, the particular doctrine that Storer has asserted here—voluntary cessation—places the burden on the defendant, as discussed further below.  *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000).

8

from granting effective relief, the claim is moot and must be dismissed." *Am. Rivers*, 126 F.3d at 1123. "The central question of the mootness analysis is whether a change in circumstances since the initiation of the claim or motion has rendered meaningless any relief the court would otherwise grant." *Gerke v. Travelers Cas. Ins. Co. of Am.*, No. 3:10-CV-01035-AC, 2013 WL 6241983, at *5 (D. Or. Dec. 3, 2013) (citing *West v. Sec'y of Dep't of Transp.*, 206 F.3d 920, 926 n.4 (9th Cir. 2000)).

Where a party seeks injunctive relief, voluntary cessation of the challenged conduct generally does not moot a case. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). Otherwise, a "defendant would be free to resume the conduct" after dismissal. *Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1198 (9th Cir. 2019). The standard for evaluating voluntary cessation is stringent. *Friends of the Earth*, 528 U.S. at 189. The party asserting mootness bears a "formidable burden" and must persuade the court that "it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Id*. at 190 (quoting *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968)).

An ADA claim is mooted when the defendant's compliance is far more than simply voluntary cessation of challenged conduct that allows the defendant to resume the challenged conduct. *See Hickman v. Missouri*, 144 F.3d 1141, 1144 (8th Cir. 1998). Changing a policy alone that can be "capriciously" reinstated is not sufficient. *Wright v. RL Liquor*, 887 F.3d 361, 363 (8th Cir. 2018) (citing *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1183–84 (11th Cir. 2007). Structural changes, such as installing a disabled parking sign and painting a disabled parking spot, however, can be sufficient. *Wright*, 887 F.3d at 363.

**2.   Storer Has Not Met Its Burden in Asserting Mootness**

Storer's argument that it voluntarily ceased its challenged conduct does not meet Storer's heavy burden in showing that the conduct could not reasonably be expected to recur. Storer provides evidence that in December 2018, Storer amended its policies "to allow anyone to sit in the ADA seating area if they self-identify as disabled." Kelley Decl. ¶ 3. In addition, Storer asserts that it trained all bus drivers to relay its new policies in January 2019, *id*. ¶ 5, and provided

9

1   a memorandum to bus drivers communicating the policy changes, *id*. Ex. A.  In January 2019,
2   Storer added headrest covers to certain seats indicating that they are reserved for the disabled.
3   Kelley Decl. ¶ 4.

4   Storer's heavy burden in asserting mootness is illustrated in *Already, LLC v. Nike, Inc.*
5   568 U.S. 85, 93 (2013).  In that case, Nike alleged that Already's shoe designs violated a Nike
6   trademark.  *Id*. at 88.  Already's counterclaim, which challenged the validity of the trademark, was
7   mooted when Nike issued a broad covenant not to sue Already.  *Id*. at 88–89, 100.  The covenant
8   was unconditional, irrevocable, and broad, and specified that Nike could not make any claim or
9   demand against Already, or any of its affiliates, for any claim for relief involving the disputed
10  trademark with respect to any past or present Already shoe or any colorable imitation thereof.  *Id*.
11  at 93.  The Court determined that Nike's challenged conduct—the enforcement of its trademark
12  against Already—could not reasonably be expected to recur, given such a broad covenant.  *Id*.
13  at 100.  Accordingly, Already's counterclaim challenging the validity of the trademark was moot.
14  *Id*.

15  In the context of the ADA, permanent structural changes can render a case moot.  *Wright*,
16  887 F.3d at 363; *Ramirez v. Golden Crème Donuts*, 670 F. App'x 620, 621 (9th Cir. 2016).  In
17  *Wright*, the plaintiff alleged that the defendant's parking lot did not comply with the ADA.  887
18  F.3d at 362.  The Eighth Circuit held that the defendant was successful in showing that its
19  challenged conduct "could not reasonably be expected to recur" when the defendant painted a van-
20  accessible parking spot and installed a handicap parking sign.  *Id*. at 363 (quoting *Friends of the*
21  *Earth*, 528 U.S. at 189).  Similarly, the Ninth Circuit has held, albeit in a nonprecedential decision,
22  that the installation of a permanent wall blocking the public's access to an allegedly non-ADA
23  compliant bathroom mooted the issue because the wall made it "absolutely clear that the allegedly
24  wrongful behavior could not reasonably be expected to recur."  *Ramirez*, 670 F. App'x at 621
25  (quoting *Friends of the Earth*, 528 U.S. at 189).

26  In contrast to permanent structural changes, voluntary cessation only amounting to a
27  reversible policy change does not show that the challenged conduct cannot reasonably be expected
28  to recur.  *See Sheely*, 505 F.3d at 1189; *see also Butler v. WinCo Foods, LLC*, 613 F. App'x 584,

585 (9th Cir. 2015). In *Sheely*, the plaintiff challenged the defendant's policy of forbidding service animals beyond the waiting area of its medical facility under the ADA. 505 F.3d at 1178. When the defendant later changed its policy to allow service animals shortly before moving to dismiss the case as moot, the Eleventh Circuit expressed skepticism with respect to the defendant's motive in changing its policy and held that the defendant did not meet its burden in showing that the policy cannot reasonably be expected to recur. *Id*. at 1187–89.

In *Butler*, another nonprecedential but persuasive decision by the Ninth Circuit, the court underscored the importance of permanence in determining mootness in cases of voluntary cessation. *See* 613 F. App'x at 586. The plaintiff in that case challenged the defendant's "policy prohibiting service animals from riding in grocery carts" under the ADA. *Id*. at 585. The court held that, although the defendant granted the plaintiff a special exemption from the policy and began training its staff to honor that exception, the case was not moot because the contested policy was still in place, the special exemption was not "sufficiently entrenched and permanent," and it was "not 'absolutely clear' that such training cannot reasonably be expected to cease." *Id*. at 586 (quoting *Friends of the Earth*, 528 U.S. at 190).

Storer's actions do not meet its heavy burden in asserting voluntary cessation. Storer's asserted voluntary compliance consists of a change of policies, employee training, and the installation of headrest covers. Kelley Decl. ¶¶ 3–5. Even if the Court assumes that Storer's changes bring it in compliance with the ADA, Storer has not met its burden to show that its challenged policies cannot "reasonably be expected to recur." *See Friends of the Earth*, 528 U.S. at 189 (quoting *Concentrated Phosphate*, 393 U.S. at 203). Storer's installation of headrest covers are unlike the permanent installation of a handicap parking sign in *Wright* and the installation of the wall blocking public access to the restroom in *Ramirez* that rendered those cases moot, both because they do nothing to address Sullivan's experience of a driver rejecting her claim that she is disabled, and because they could easily be removed. *See Wright*, 887 F.3d at 363; *see also Ramirez*, 670 F. App'x at 621. Storer's changes in policy are also easily reversible, like the withdrawn no-dogs policy in *Sheely* and the special exemption granted to the plaintiff in *Butler*. *See Sheely*, 505 F.3d at 1178; *see also Butler*, 613 F. App'x at 586.

Accordingly, Storer's voluntary compliance does not render meaningless any relief the Court could otherwise grant to Sullivan. *See Gerke*, 2013 WL 6241983, at *5 (citing *West*, 206 F.3d at 926 n.4). Further, Storer's ability to revert to its previous policies is unlike the irrevocable covenant not to sue in *Already* that made it "absolutely clear" that the case was moot. *See* 568 U.S. at 102. Because Storer has not met its burden in asserting mootness based on voluntary cessation, Storer's motion to dismiss for lack of subject matter jurisdiction is DENIED.

### B. Storer's Motion to Dismiss for Failure to State a Claim

#### 1. Legal Standard Under Rule 12(b)(6)

A complaint may be dismissed for failure to state a claim on which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a claimant's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A pleading must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678

12

(quoting *Twombly*, 550 U.S. at 557). Rather, the claim must be "'plausible on its face,'" meaning that the claimant must plead sufficient factual allegations to "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

### 2. Sullivan Has Adequately Alleged a Claim for Relief Under the ADA

A plaintiff claiming disability discrimination in public accommodations under the ADA "must show that (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). While Sullivan of course need not prove those elements with evidence at the pleading stage, she must present "either direct or inferential allegations respecting all the material elements necessary to sustain recovery." *Twombly*, 550 U.S. at 562.

Sullivan adequately pleaded that she is disabled under the ADA. To be "disabled within the meaning of the ADA," *see Molski*, 481 F.3d at 730, a plaintiff must have "a 'physical or mental impairment that substantially limits one or more major life activities,'" such as "'walking, standing, lifting . . . and working.'" *Valteirra v. Medtronic Inc.*, 934 F.3d 1089, 1091 (9th Cir. 2019) (quoting 42 U.S.C. § 12102) (ellipsis in original). "An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. § 1630.2(j)(ii).

In the FAC, Sullivan details a series of injuries to her left knee and right hand. ¶¶ 10–14. In short, Sullivan's knee was first injured after being struck by a vehicle in 2008. *Id.* ¶ 10. Over the following years, she was treated with physical therapy, knee surgery, and a knee brace. *Id.* ¶¶ 10–11. Sullivan alleges that her knee occasionally buckles. *Id.* ¶ 11. In Sullivan's application for disabled person placards or plates from the DMV, her primary care physician described her condition as "[a]dvanced osteoarthritis (L) knee." *Id.* ¶ 14. The DMV approved her application and her placard expired in June 2019. *Id.*

Sullivan alleges that she first injured her right hand in May 2015 when her left knee buckled, causing her to fall and fracture her right hand. *Id.* ¶ 11. Sullivan further injured her hand

13

while performing a task at work in May 2018 and was determined to be 5% permanently disabled in her right hand. *Id.* ¶ 12. As a result of her hand and knee injuries, Sullivan alleges that she is substantially limited in performing major life activities, such as walking, standing, sleeping and working. *Id.* ¶ 25.

When Sullivan's allegations of her injuries are taken together, it is reasonable to infer that she is plausibly disabled within the meaning of the ADA. Sullivan's claim that she is substantially limited in performing major life activities is not a "formulaic recitation" of the elements of her claim for relief, as Storer argues, because Sullivan has adequately pleaded a medical history that supports an inference that she would be substantially limited in walking and other major life activities by her injuries. *See* Reply at 4 (quoting *Iqbal*, 556 U.S. at 678).

In addition, Sullivan adequately alleged that she "was denied public accommodations by the defendant because of her disability." *See Molski*, 481 F.3d at 730 (2007). Discrimination under the ADA does not merely prohibit obvious and intentional discrimination, "such as a sign stating that persons with disabilities are unwelcome or an obstacle course leading to a store's entrance." *Chapman*, 632 F.3d at 945. Refusing access to disabled seating is actionable. *Fortyune v. American Multi-Cinema, Inc.*, 364 F.3d 1075, 1087 (9th Cir. 2004). In *Fortyune*, a wheelchair-bound moviegoer and his aide were unable to see a sold-out film when the theater manager refused to move another customer from a "companion seat"[5] next to a wheelchair space. *Id.* at 1078–79. The theater's policy prohibited the manager from moving the other customer during a sold-out movie. *Id.* at 1079. The court held that because the theater's policy did not allow the wheelchair-bound patron to sit next to his aide, the policy was discriminatory in effect. *Id.* at 1083.

Here, Sullivan alleges that Storer denied her access to the disabled seating because the bus driver did not believe she was disabled. FAC ¶ 17. Similar to the theater's policy in *Fortyune*, Storer's policy allowed its employees to deny access to disabled seating for its intended users. *See*

---

[5] The companion seat was "intended for use by the companions of individuals with disabilities" and a sign on the back of the seat communicated the intended use to patrons. *Fortyune*, 364 F.3d at 1078.

Mot. 10–11. Sullivan, therefore, sufficiently alleges discrimination under the ADA because Sullivan alleges that Storer's policy was discriminatory in effect. What's more, Sullivan alleges that after she left the bus, Storer allowed a non-disabled passenger to sit in the reserved seating. FAC ¶¶ 19–20.

Sullivan's complaint could also be construed as asserting a claim that Storer failed to provide reasonable modifications. A plaintiff can establish discrimination under Title III of the ADA by showing that a defendant failed to make reasonable modifications of its policies necessary to accommodate the plaintiff's disability. *Fortyune*, 364 F.3d at 1082. To support a claim, the modification must be necessary and reasonable, and must not fundamentally alter the nature of the business. *Id*. Necessary modifications do not just include those strictly necessary to provide physical access; rather, they include modifications necessary to provide a disabled individual full and equal enjoyment of a public accommodation. *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1134–35 (9th Cir. 2012). Reasonableness is a fact-specific inquiry that considers the requested accommodation and the disabled individual's circumstances. *See Wong v. Regents of the Univ. of Cal.*, 192 F.3d 807, 818 (9th Cir. 1999). Broadly, an unreasonable accommodation "imposes 'undue financial and administrative burdens.'" *Fortyune*, 364 F.3d at 1083 (quoting *School Bd. Of Nassau County v. Arline*, 480 U.S. 273, 288 n.17 (1987)).[6]

Here, Sullivan adequately alleges facts to support a claim that Storer failed to provide a reasonable modification. Taking Sullivan's allegations as true, Storer had a policy of setting aside seats at the front of its buses for disabled passengers at the time of the incident, but at least one driver did not allow passengers whose disabilities were not visibly apparent to use those seats. First, Sullivan alleges facts sufficient to plausibly show that a modification to allow her—a passenger with a non-obvious disability—to use those seats would be necessary to her full and equal enjoyment because her alleged disability causes her difficulty in walking. FAC ¶ 25. Second, Sullivan's requested modification is plausibly reasonable because changing Storer's

---

[6] Although *Arline* addressed reasonableness under the Rehabilitation Act, the same standard applies to reasonable accommodations within the meaning of the ADA. *Fortyune* 364 F.3d at 1083.

disabled seating policy to ensure that passengers with relevant disabilities can use the reserved seats even if they "don't have a walker or a cane," *cf. id.* ¶ 17, could likely be accomplished without undue burden. Indeed, Storer already has modified the policy. Kelley Decl. ¶ 3. Finally, a policy allowing Storer access to the disabled seating would not fundamentally alter the transportation services offered by Storer. Sullivan, thus, alleges facts sufficient to support a claim that Storer failed to provide Sullivan reasonable modifications to accommodate her disability.

Storer cites no case that holds a company's refusal to allow a disabled person to use seating or other accommodations made available for the disabled is not discrimination prohibited by the ADA. Sullivan's allegations that she was not allowed to sit in a seat reserved for the disabled despite communicating her disability to the bus driver are sufficient for pleading purposes that she was denied "full and equal enjoyment of . . . services" on the basis her disability. 42 U.S.C. § 12182(a). Storer's motion to dismiss for failure to state a claim is DENIED.

### C. Storer's Motion to Strike

A party may move the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993)). "Motions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." *Mag Instrument, Inc. v. JS Prods., Inc.*, 595 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008). "Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court." *Nguyen v. CTS Elecs. Mfg. Sols. Inc.*, No. 13-cv-03679-LHK, 2014 WL 46553, at *3 (N.D. Cal. Jan. 6, 2014) (citing *Whittlestone*, 618 F.3d at 973).

Storer renews it motion to strike Sullivan's request for damages under the ADA. As the Court previously held in denying the same request in Storer's previous motion, while Storer remains correct that compensatory damages are not available under the ADA itself, *see Molski*, 481 F.3d at 730, Sullivan is correct that the California Civil Code allows a plaintiff to recover

damages for violations of the ADA.  A violation of the ADA is a per se violation of both the Unruh Act, Cal. Civ. Code § 51(f), and the California Disabled Persons Act, Cal. Civ. Code § 54.1(d), both of which allow a plaintiff to recover damages for such a violation.  Federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam).  Although the Court previously requested that "Sullivan's amended complaint should situate any requests for damages within claims under the statutes that directly allow for such recovery," Order Granting Mot. to Dismiss at 10, the Court nevertheless still discerns little if any value in striking a request for damages to which Sullivan would be entitled if she proves her claim merely because it fails to reference all of the statutes relevant to such recovery.  Storer's motion to strike is DENIED.

## IV.   CONCLUSION

Based on the foregoing, Storer's motion to dismiss and strike is DENIED.

**IT IS SO ORDERED.**

Dated: June 16, 2020

_____
JOSEPH C. SPERO
Chief Magistrate Judge